**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| K.S.S., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| | : | |
| MONTGOMERY COUNTY BOARD OF | : | NO. 12-816 |
| COMMISSIONERS, MONTGOMERY COUNTY | : | |
| OFFICE OF CHILDREN AND YOUTH, | : | |
| COUNTY OF MONTGOMERY, and | : | |
| THOMAS D. DIAMOND, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                      May 14, 2012

Currently pending before the Court is the Motion of Defendants Montgomery County Board of Commissioners, Montgomery County Office of Children and Youth, and County of Montgomery (collectively hereinafter "the County Defendants" or "Defendants")[1] to Dismiss Counts V through VIII of Plaintiff K.S.S.'s Complaint.[2]  For the following reasons, the Motion is granted in part and denied in part.

---

[1]  Plaintiff asserts nearly identical civil rights claims against each County Defendant individually. Thus, when the Court refers to "Defendants" in this Memorandum, it is addressing all three County Defendants collectively.  To the extent a claim solely addresses a particular County Defendant, the Court will clearly identify the specific County Defendant relevant to the discussion.

[2]  Counts I through IV of Plaintiff's Complaint solely assert claims against Defendant Thomas D. Diamond ("Diamond"), and are not relevant to the instant Motion.

## I.      FACTS AND PROCEDURAL HISTORY

This action stems from an unfortunate series of events related to the sexual abuse of a minor, Plaintiff K.S.S.[3]  In the summer of 2002, the County Defendants placed K.S.S., then a thirteen-year-old minor, in the foster care of Defendant Diamond, an adult male.  (Compl. ¶¶ 6, 10.)  According to Plaintiff, the County Defendants never disclosed to Plaintiff or his biological grandparents that Diamond was a pedophile.  (Id. ¶ 12.)  For several years thereafter, Diamond sexually abused, molested, and indecently assaulted K.S.S.  (Id. ¶ 13.)  Diamond engaged in the sexual assault of K.S.S. both individually and in concert with others.  (Id.)  According to the facts set forth in the Complaint, Diamond invited strange adult men that he met on the Internet to his residence for the purpose of "gang raping" K.S.S.  (Id. ¶¶ 14, 33(m).)  During these encounters, Diamond forced K.S.S. to engage in lewd sexual acts with the adult men, thereby exposing him to severe physical and mental harm.  (Id. ¶ 33(a–n).)  Diamond's live-in companion, "Alonzo," also participated in the sexual assault of Plaintiff.  (Id. ¶ 14.)

In June of 2005, Alonzo reported the victimization of K.S.S. to the Upper Merion Police Department.  (Id. ¶ 15.)  Diamond was arrested and criminally charged with various crimes related to the sexual assault, aggravated indecent assault, and corruption of minor K.S.S..  (Id. ¶ 16.)  On August 7, 2006, Diamond pleaded guilty to several of the criminal charges before the Montgomery County Court of Common Pleas, and was sentenced to five to ten years of incarceration.  (Id. ¶¶ 17, 18.)  Diamond remains an inmate at the State Correctional Institute in Waymart, Pennsylvania.  (Id. ¶ 6.)

Plaintiff initiated the instant civil action by filing his Complaint on February 15, 2012,

---

[3] Plaintiff is now a twenty-three year old adult.  However, due to the sensitive factual nature of this case related to incidents that occurred when Plaintiff was a minor, the Court will continue to identify Plaintiff by his initials, rather than full name.

asserting four counts against the County Defendants: (1) violations of Plaintiff's civil rights secured by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 against Defendant Montgomery County Board of Commissioners (Count V); (2) violations of Plaintiff's Fifth and Fourteenth Amendment civil rights pursuant to § 1983 against Defendant Montgomery County Office of Children and Youth Services (Count VI); (3) violations of Plaintiff's Fifth and Fourteenth Amendment civil rights pursuant to § 1983 against Defendant County of Montgomery (Count VII); and (4) a violation of Plaintiff's civil rights related to the County's "special relationship" with Plaintiff, the County's creation of a "state created danger," and the County's municipal liability according to the Supreme Court's decision in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978) (Count VIII). Plaintiff seeks compensatory and punitive damages for these claims. On March 16, 2012, the County Defendants filed a Motion to Dismiss Counts V through VIII. Plaintiff filed a Response in Opposition on April 9, 2012. The Court will now consider the merits of the County Defendants' Motion.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court

3

enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

4

III.    **DISCUSSION**

The County Defendants move to dismiss Counts V through VIII of Plaintiff's Complaint for several reasons, including that: (1) Defendant Montgomery County Office of Children and Youth ("MCOCY") is not a legal entity subject to suit; (2) Plaintiff's claims against the Board of County Commissioners ("the Board of Commissioners") are duplicative of the claims against the County of Montgomery ("the County"); (3) Plaintiff fails to allege sufficient facts to state a plausible § 1983 action against the County Defendants; and (4) punitive damages are impermissible in § 1983 litigation.  The Court considers each reason separately below.

A.    **MCOCY (Count VI)**

Defendants assert that all claims asserted against MCOCY individually should be dismissed from suit because, as a mere department of the County as a whole, it is not a separate legal entity that is independently subject to suit.  It is well established that arms of local municipalities—such as county departments and agencies like MCOCY—do not maintain an existence independent from the municipality.  See Burton v. City of Phila., 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000) (internal citations omitted); Irwin v. Borough of Darby, 937 F. Supp. 446, 450 (E.D. Pa. 1996).  In his Response in Opposition, Plaintiff concedes this point.  As such, Defendant MCOCY is dismissed as an independent defendant in the instant litigation, and Count VI is dismissed from the suit.

B.    **The Board of Commissioners (Count V)**

Similarly, Defendants assert that Defendant the Board of Commissioners should likewise be dismissed from suit because the claims asserted against it are duplicative of those made against Defendant County of Montgomery.  Specifically, Defendants allege that "when a Board of County Commissioners is sued but the County [itself] is not, courts rightfully treat the claim as one asserted,

in substance, against the County."  (Defs.' Mot. Dismiss 10.)

When asserting claims against a government official pursuant to 42 U.S.C. § 1983, the official may be sued in his official or individual capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985); Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)) (internal quotation marks omitted).  Suits against government officers in their official capacity therefore should be treated as suits against the government entity itself.  Hafer, 502 U.S. at 25 (citing Graham, 473 U.S. at 166).  On the other hand, individual capacity suits seek to impose personal liability upon the individual officer named as a defendant in the legal action.  Id. at 25.

Here, Plaintiff does not assert claims against or name any individual members of the Board of Commissioners in his Complaint and Response in Opposition.  Rather, in Count V, Plaintiff generally alleges that the Board, and any of its affiliated "agents," "servants," "employees," or "independent contractors" violated his civil rights when they "failed to properly screen, monitor, investigate, supervise, and[ ] oversee" the foster care program that placed K.S.S. in Diamond's supposed "care." (Compl. ¶¶ 45, 49.)  As such, it appears that Plaintiff is suing the Commissioners in their official capacity.  The law is clear, however, that when claims are asserted against government officers in their official capacity, "[s]uch claims effectively merge with claims against, the real party in interest, [the] County[.]"  Brown v. Montgomery Cnty., No. Civ.A.08-4259, 2010 WL 742818, at *2 (E.D. Pa. Feb. 24, 2010); see also Brandon v. Holt, 469 U.S. 464, 471(1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity he represents.").  As such, dismissal of Plaintiff's claims against the Board of Commissioners in their official capacities is appropriate, and Count V is likewise dismissed from suit.

6

## C.      The County of Montgomery (Count VII)

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004) (internal citation omitted); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. Civ.A.07-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).  Federal law requires a plaintiff to satisfy two steps in order to properly establish a § 1983 claim: (1) the deprivation of a constitutional right or other federal law, and (2) that a "person acting under the color of state law" is responsible for the alleged deprivation.  Collins v. City of Harker Heights, 503 U.S. 115, 119–20 (1992).

In Count VII of the instant case, Plaintiff claims that the County[4] engaged in conduct committed under the color of state law that deprived him of his procedural and substantive due process rights to bodily integrity, safety, and welfare.[5]  (Compl. ¶¶ 2, 11, 67.)  Plaintiff also claims

_____

[4] In his Complaint, Plaintiff asserts that MCOCY and the Board of Commissioners likewise engaged in conduct that deprived him of his procedural and substantive due process rights.  (Compl. ¶¶ 2, 11, 49, 58.)  However, given that the Court already dismissed MCOCY and the Board as individually named defendants in this suit, it need only address Plaintiff's § 1983 claims with regard to Defendant County of Montgomery.

[5] In his Complaint, Plaintiff asserts that the County violated both his Fifth and Fourteenth Amendment due process rights.  (Compl. ¶¶ 2, 11.)  It is well established law, however, that the Fifth Amendment only applies to actions taken by the federal government.  See Nguyen v. U.S.

in Count VIII that the County, which was in a "special relationship" with him, failed to properly train, supervise, and discipline its government officials.  (Id. ¶¶ 71, 73.)  Plaintiff further asserts that the County, through the affirmative acts of its officers, subjected K.S.S. to a "state created danger." (Id. ¶ 72.)  In response, Defendants assert that dismissal is required because Plaintiff has not pled sufficient facts to establish a plausible claim under § 1983.

### 1.    Procedural Due Process

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (internal citations omitted).  In order to successfully establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate.  See Mulholland v. Gov't of Cnty. of Berks, No. Civ.A.10-5616, 2012 WL 1057446, at *8 (E.D. Pa. Mar. 29, 2012) (citing Studli v. Children & Youth & Fam. Ctr. Reg'l Office, 346 F. App'x 804, 813 (3d Cir. 2009)). Remedial procedures will be found to be constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair."  See Leonard v. Owen J. Roberts Sch. Dist., No. Civ.A.08-2016, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009) (citing Daniels v. Williams, 474 U.S. 327, 341 (1987) (Stevens, J., concurring)).  Put differently, if a plaintiff avers a lack of adequate procedures to protect his liberty or property interest at issue, then the inquiry is whether the government has an established procedure in place that would in fact

---

Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) (citing Pub. Util. Comm'n v. Pollak, 343 U.S. 451, 461 (1952)) (paranthetical omitted).  Here, the County is a local government entity, not a part of the federal government system.  As such, all allegations made by Plaintiff on the basis that the County violated his Fifth Amendment rights are dismissed.

remedy the infringement.  As such, the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest.  Leonard, 2009 WL 603160, at *4.

Here, Plaintiff avers that the County deprived him of his procedural due process rights to bodily integrity, safety, and welfare when they placed him in the foster care of Diamond and declined to remove him from the residence before and/or after K.S.S. was physically and sexually assaulted. (Compl. ¶¶ 66, 67.)  The Supreme Court has recognized that interests in bodily integrity and freedom from bodily harm qualify as protected liberty interests under the Due Process Clause.  See Daniels, 474 U.S. at 341 (1987) (Stevens, J., concurring) (recognizing freedom from bodily harm as a liberty interest); Washington v. Glucksberg, 521 U.S. 702, 777 (1997) (recognizing bodily integrity as a liberty interest).  As such, Plaintiff successfully establishes the first element of a procedural due process violation.

Plaintiff does not, however, satisfy the requirements of the second element of procedural due process in his Complaint, *i.e.*, that the procedures used by the County to remedy the deprivation were constitutionally inadequate.  Plaintiff does not allege a lack of notice or hearing.  Instead, his argument focuses on the government's actions taken in regard to K.S.S., rather than on the lack of an adequate remedial procedure.  Plaintiff's Complaint, in fact, does not reference any remedial procedures used by the County, let alone allege that they were constitutionally inadequate. Therefore, to the extent Plaintiff's claim is based on a violation of his procedural due process rights, it is dismissed.

### 2.    Substantive Due Process

The substantive component of the Due Process Clause bars certain arbitrary and wrongful government actions that would deprive an individual of life, liberty, or property.  Tazioly v. City of

Phila., No. Civ.A.97-1219, 1998 WL 633747, at *7 (E.D. Pa. Sept. 10, 1998) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)). The first step in assessing a substantive due process claim is to identify the constitutional interest that was allegedly aggrieved.  See Harris v. Lehigh Cnty. Office of Children & Youth Servs., 418 F. Supp. 2d 643, 647 (E.D. Pa. 2005) (citing Williams v. Borough of W. Chester, 891 F.2d 458, 464 (3d Cir. 1989)).  In this case, Plaintiff avers that the County deprived him of his liberty interests to bodily integrity, safety, and well-being.  (Compl. ¶¶ 2, 11.) All three rights are recognized as protected liberty interests under the Fourteenth Amendment Due Process Clause.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (recognizing personal bodily integrity as a liberty interest under the Due Process Clause); Harris, 418 F. Supp. 2d at 647 (citing Youngberg v. Romeo, 457 U.S. 307, 315–19 (1982) (paranthetical omitted)) (recognizing an individual's liberty interest in his personal security and well-being).

The Court is next required to identify whether the identified liberty interests have, in fact, been aggrieved according to the facts pled in the plaintiff's Complaint.  Harris, 418 F. Supp. 2d at 647.  In the instant case, Plaintiff advances two bases for his argument that his substantive due process rights were aggrieved: (1) that the County maintained a special relationship with him and failed to protect him from the private actions of a third party in accordance with the duties owed to him under that relationship; and (2) the state-created danger theory. The court considers each basis of liability in turn.

### a.     Special Relationship

The Supreme Court has recognized that the government generally does not have an affirmative duty to take action to ensure that citizens are able to exercise, enjoy, or realize the benefits of a particular constitutional right.  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).  There is, however, an exception to the DeShaney rule when the government

places sufficient restraints on an individual's liberty that results in the creation of a "special relationship" with that person, and a substantive due process right arises out of the affirmative duties created by that relationship.  Harris, 418 F. Supp. 2d at 647.  Specifically, "if the state has taken a person into its custody and is holding that person against his or her will, the state has formed a special relationship that imposes 'affirmative duties of care and protection on the state.'"  Leonard, 2009 WL 603160, at *5 (quoting Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)).

Here, Plaintiff avers that the County created a special relationship with K.S.S. when MCOCY placed him in the foster care of Diamond.  (Compl. ¶ 71.)  This Court has previously recognized that "when the State places a child in [s]tate-regulated foster care, [it] has entered into a 'special relationship' with that child which imposes upon it certain affirmative duties [and a] [f]ailure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under Section 1983."  Harris, 418 F. Supp. 2d at 647 (internal citation omitted).  As such, Plaintiff has sufficiently plead the existence of a special relationship between K.S.S. and the County in his Complaint.  Defendants' Motion on this ground is therefore denied.

### b.   The State-Created Danger Theory

Plaintiff also alleges that the County violated his substantive due process rights based on the state-created danger theory of liability.  Specifically, Plaintiff avers that "[t]he placement of K.S.S. with Thomas D. Diamond, without any means [ ] whatsoever to guard against the likelihood of a sexual assault therein . . . are affirmative act(s) and subjected K.S.S. to a state created danger[.]"  (Compl. ¶ 72.)  In response, Defendants assert that these allegations ring hollow because they qualify as no more than a mere threadbare recital of the legal standard governing the state-created danger theory.  (Defs.' Mot. Dismiss 6, 9.)

In DeShaney, the Supreme Court established the state-created danger theory, which provides

11

that "government actors can be held liable under § 1983 for private harm which befalls a citizen where 'state authority is affirmatively employed in a manner that injures the citizen or renders him more vulnerable to injury from another source than he would have been in the absence of state intervention.'"  Hayes v. Erie Cnty. Office of Children & Youth, 804 F. Supp. 2d 356, 391 (W.D. Pa. 2011) (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (internal alterations of text and further citation omitted).  In interpreting this same theory, the United States Court of Appeals for the Seventh Circuit has stated that: "'[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say its role was merely passive; it is as much an active tortfeasor as if it had thrown him into the snake pit.'"  Hayes, 804 F. Supp. 2d at 391 (quoting Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982)).

In Mark v. Borough of Hatboro, 51 F.3d 1137 (3d Cir. 1995), the Third Circuit established a four-part test to determine if a state-created danger exists such that the government would be found constitutionally liable for the plaintiff's injuries.  Id. at 1152.  Liability will attach if the following four elements are satisfied: (1) the harm ultimately caused to the victim was foreseeable and fairly direct; (2) the government acted in willful disregard for the safety of the plaintiff; (3) a relationship existed between the government actor and the plaintiff; and (4) the government actors used their authority to create a danger to the citizen or to render the citizen more vulnerable to danger than had the state not acted at all.  Id.; see also Hayes, 804 F. Supp. 2d at 391–92 (citing Bright, 443 F.3d at 281)).  The failure of the plaintiff to establish any of these elements precludes a viable claim based on the state-created danger theory.  Hayes, 804 F. Supp. 2d at 392 (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 914 (3d Cir. 1997)) (paranthetical omitted).

### a.      Foreseeability of Harm

The first element of the state-created danger theory is a two-pronged inquiry requiring the

plaintiff to show that: (1) the harm ultimately caused was foreseeable, and (2) the harm was fairly direct.  In regard to the foreseeability aspect of the first element, the law requires "an awareness on the part of the state actors that rises to the level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 238 (3d Cir. 2008).  In interpreting this requirement, this Court has previously stated that: "[a] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual . . . such that the actor is on notice that his or her act or failure to act significantly enhances the risk of harm."  Gremo v. Karlin, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005).

In his Complaint, Plaintiff claims that the County never disclosed to him or his biological grandparents that Diamond was a pedophile, and declined to remove him from Diamond's residence before and/or after he was sexually abused. (Compl. ¶¶ 12, 66, 69(d, h).) It is unclear from Plaintiff's allegations, however, whether the County had actual knowledge or were placed on sufficient notice of Diamond's pedophilic tendencies prior to placing him in Diamond's home.  Nor is it evident from the face of the Complaint whether the County was alerted, or had some reason to know, that Diamond was sexually abusing K.S.S. after he was placed within his foster care.  The Court is cognizant of the fact, however, that we are at the preliminary motion to dismiss stage of proceedings, and that discovery may bear out the answers to such lingering inquiries.

As to the second part of the inquiry—*i.e.*, that the plaintiff's harm was a fairly direct result of the defendant's acts—the court must assess whether the "'alleged misconduct and the harm caused were "too attenuated" to justifiably hold the defendant liable.'"  Hayes, 804 F. Supp. 2d at 392 (citing D.N. ex rel. Nelson v. Snyder, 608 F. Supp. 2d 615, 625 (M.D. Pa. 2009); Phillips, 515 F.3d at 238)). In interpreting this requirement, the Third Circuit has stated that "a distinction exists

13

between harm that occurs to an identifiable or discrete individual under the circumstances and harm that occurs to a 'random' individual with no connection to the harm-causing party." Phillips, 608 F. Supp. 2d 615, 625 (3d Cir. 2009) (internal citation and quotation omitted). Here, the harm caused to K.S.S.—his sexual and physical abuse—was the direct result of Diamond's actions. If, however, the County knew or had reason to know of Diamond's molestation and abusive tendencies, then the abuse of K.S.S. could also be a result of the County's decision to place him in Diamond's foster care. See Snyder, 608 F. Supp. 2d at 625 (finding that state actors' knowledge of abuser's "dangerous proclivities to exploit children" were sufficient to satisfy first element); Pascocciello v. Interboro Sch. Dist., No. Civ.A.05-5039, 2006 WL 1284964, at *5 (E.D. Pa. May 8, 2006) (same). As such, the Court will assume without deciding that Plaintiff could make out the first element of the state-created danger theory after discovery has been completed.

### b.       Culpability

The second element of the state-created danger theory asks whether the government actor acted "with a degree of culpability that 'shocks the conscience.'" Hayes, 804 F. Supp. 2d 356. While the Third Circuit has indicated that there is no "calibrated yardstick" upon which behavior can be measured and that the degree of wrongfulness depends upon the particular facts of each case, Kaucher v. Cnty. of Bucks, 455 F.3d 418, 425 (3d Cir. 2006) (internal citation omitted); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000) (internal citation omitted), the Supreme Court has stated that only when the state actor's behavior is "*so egregious*, *so outrageous*, [then] it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998) (emphasis in original). Thus, a plaintiff must establish that a defendant's actions "consciously disregarded, not just a substantial risk, but a great risk that serious harm would result[.]" Ziccardi v. City of Phila., 288 F.3d 57, 66 (3d Cir. 2002).

In the instant case, if the County knew or had reason to know of Diamond's pedophilic tendencies and nonetheless permitted K.S.S. to be entrusted to his care, then such conduct could arguably be described as "egregious" and "outrageous."  As such, the Court will once again assume without deciding that Plaintiff could make out the second element of the state-created danger theory based on the facts pled in his Complaint.

        **c.**       **Relationship**

The third element requires the plaintiff to show that a relationship existed between him and the government, such that "'the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discreet class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general.'"  <u>Snyder</u>, 608 F. Supp. 2d at 626 (quoting <u>Bright</u>, 443 F.3d at 281)) (further citations omitted).

Our sister court in the Western District addressed a similar claim in <u>D.N. ex rel. Nelson v. Snyder</u>, 608 F. Supp. 2d 615 (W.D. Pa. 2009).  In that case, government actors had sufficient reason to believe that the child abuser at issue would sexually molest the siblings of foster children that were placed in his care because he had previously viewed child pornography on his government-issued work computer.  <u>Id.</u> at 626.  In assessing these facts in regard to the third element of the state-created danger theory, the court found that the government actors' actions placed a discrete class of individuals—Pennsylvania foster children—in danger, and therefore gave rise to the existence of the requisite relationship.  <u>Id.</u>

This Court finds <u>Snyder</u> instructive here.  It is possible that after discovery is completed, Plaintiff will be able show that County officials had reason to believe that Diamond would sexually assault K.S.S. Just as in <u>Snyder</u>, this would give rise to a relationship between Plaintiff and the government because the government's actions placed a child of the Pennsylvania foster care system in danger.  Thus, the third element could likewise be satisfied under these circumstances.

### d.      Affirmative Act

The final element of the state-created danger theory can further be broken down into three necessary conditions: (1) a government actor exercised his authority; (2) the actor took an affirmative action; and (3) this affirmative act created a danger to the citizen or rendered the citizen more vulnerable than had the state not acted at all.  Hayes, 804 F. Supp. 2d at 392 (citing Ye v. United States, 484 F.3d 634, 639 (3d Cir. 2007)) (further citations omitted).

The first condition requires the Court to consider whether the state actor exercised his authority.  The Third Circuit has expressly stated that "[t]he 'authority' language is simply a reflection of the 'state actor' requirement[.]"  Ye, 484 F.3d at 640.  As recognized below in Part D, *supra*, the County could potentially be held liable for § 1983 purposes pursuant to a theory of municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  Thus, the first condition of the fourth element of the state-created danger theory is met under these circumstances.

The next two conditions require a more intensive analysis.  The second condition—that the state actor undertook an affirmative action—has generated significant discussion within this jurisdiction.  "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause[.]"  DeShaney, 489 U.S. at 200.  Moreover, the Third Circuit has recognized that "the determinative inquiring is not whether conduct is properly characterized as an affirmative act or omission, but whether state action has placed the plaintiff in a foreseeably dangerous position."  Snyder, 608 F. Supp. 2d at 627 (citing Bright, 443 F.3d at 283 n.7)) (further citations omitted).

This element of the state-created danger theory was previously discussed by the Third Circuit

in Bennett v. City of Philadelphia, 499 F.3d 281 (3d Cir. 2007), in regard to factual circumstances largely similar to those in the case at hand.  In that case, the surviving siblings of a child that was beaten to death brought a § 1983 suit against the City of Philadelphia, its human services agency, and several social workers.  Id. at 286.  The siblings asserted a state-created danger claim against the government on the basis that it had rendered the deceased child more vulnerable to harm by their unfit mother and abusive caregivers when it chose to close their dependency case file.  Id. at 289.  The Third Circuit, however, disagreed, and found that the government's actions did not constitute an affirmative act.  Id.  In so holding, the Third Circuit recounted its prior holding in Bright v. West Moreland County, 443 F.3d 276 (3d Cir. 2006), in which it stated that, "[l]iability requires affirmative state action; mere 'failure to protect an individual against private violence does not violate the Due Process Clause.'"  Bennett, 499 F.3d at 288 (citing Bright, 443 F.3d at 284)).  Thus, the Third Circuit found that the state agency in Bennett did not use its authority to create an opportunity for the child to be abused because the danger already existed prior to this point.  Id. at 289.  Moreover, the court likewise held that the social worker assigned to the case did not affirmatively act because nothing he did was the "but for" cause of harm to the deceased child.  Id.

The difference between Bennett and the instant case, however, is that Bennett was brought on appeal of the District Court's grant of summary judgment, while this case remains at the preliminary motion to dismiss stage.  Although the holding of Bennett may ultimately prove to be dispositive in this case, it remains unknown at this point whether the government placed K.S.S. in the foster care of Diamond despite knowing or having reason to know of his pedophilic tendencies, thereby potentially rendering him more vulnerable to harm.

In summary, based on the above, Plaintiff's allegations at this stage of the proceedings are sufficient to withstand a Rule 12(b)(6) challenge.  While the evidence unveiled in discovery may ultimately lead to a different conclusion in this case, this inquiry is left to the summary judgment

stage of proceedings and is premature at this time.  As such, the Court finds Plaintiff has pled enough

facts such that dismissal of his state-created danger claim is precluded.

###    D.    Municipal Liability

In order to hold the County liable under either the special relationship or state-created danger

theories, Plaintiff would need to show that it maintained an official policy or custom that resulted

in the deprivation of his constitutional rights pursuant to the standards set forth by the Supreme

Court in the seminal case of Monell v. New York City Department of Social Services, 436 U.S. 658

(1978).  "[I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to

the municipality."  Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).

Rather, the plaintiff must demonstrate a direct causal link between the municipal action and the

deprivation of federal rights.  Id.; see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)

(plaintiff carries burden of demonstrating a "plausible nexus" or "affirmative link" between the

municipality's custom or policy and the constitutional deprivation challenged) (internal citation and

quotations omitted).  Moreover, a municipality may not be held liable solely on a basis of *respondeat*

*superior* liability.  Monell, 436 U.S. at 694.

An official policy exists when government agencies or boards take actions in accordance with

the authority delegated to them by the municipal body itself.  Specifically, "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy" inflicts a constitutional injury, then the government as an

entity is responsible under § 1983.  Id.  In Monell, for example, the Supreme Court found that the

actions of two agencies, the Department of Social Services and the Board of Education, in adopting

regulations set forth by City of New York that required pregnant employees to take an unpaid leave

of absence, "unquestionably involve[d] official policy."  Monell, 436 U.S. at 694.

Here, Plaintiff alleges that MCOCY and the Board of Commissioners deprived K.S.S. of his

constitutional rights pursuant to the foster care policies and regulations put in place by the County. Specifically, Plaintiff states that "discovery will reveal evidence that Montgomery County Defendants' policies of placing children within foster and/or adoptive families[ ] failed to include reasonable measures to provide proper screening of foster and/or adoptive parents, as to avoid the risk of sexual molestation and sexual assault upon innocent young children[.]" (Pl.'s Resp. Opp'n 19.)  Notice pleading only requires a claimant to state a claim upon which relief may be granted by the court, and does not require the claimant to prove his case in its entirety.  Thus, Plaintiff has satisfied his duties at this preliminary stage of the proceedings, and is therefore entitled to move forward to the discovery phase to adduce further evidence to support his claims.

Plaintiff further asserts that Defendants are municipally liable because they maintained a policy of inadequate training or supervision.  In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court held that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by the municipality . . . can a city be liable for such a failure under section 1983." Id. at 389.  Once a plaintiff identifies a municipal policy, he must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Brown, 520 U.S. at 404. If the policy does not facially violate federal law, causation can only be established by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Id. at 407 (internal citations omitted); see also Frohner v. City of Wildwood, No. Civ.A.07-1174, 2008 WL 5102460, at *11 (D.N.J. Dec. 1, 2008).  The Supreme Court has cautioned, however, that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." Brown, 520 U.S. 397, 405 (1997).

In Count VIII, Plaintiff alleges that the County Defendants "failed to properly train, monitor, discipline, and supervise [its] employees and agents, with deliberate indifference to the need for any

more, and/or different policies" and that all such government actors acted "with deliberate indifference to the constitutional rights of the citizens and individuals with whom [they] were likely to come in contact, particularly including, then minor-Plaintiff, K.S.S." (Compl. ¶ 73.) Defendants aver that these allegations are "boilerplate labels and bald legal conclusions" that amount to nothing more than a recitation of the elements of the failure to train theory, and that therefore Count VIII should be dismissed from suit. (Defs.' Mot. Dismiss 6, 9.)

While it is true that Plaintiff does not expound in avid detail on his failure to train claim in Count VIII, elsewhere in his Complaint he contends that the County, through its own agents and employees and those of the Board and MCOCY, maintained policies and customs that violated his constitutionally secured rights. Specifically, some of the policies and customs cited by Plaintiff include poor training of County personnel, failure to conduct criminal background checks, deficient screening of foster parents and in-home residents at potential foster homes, lack of thorough investigations, and deficient monitoring and oversight of foster parents after acquiring custody. (See Compl. ¶ 69(a–y).) Moreover, in Count VIII, Plaintiff specifically states that he meant to "incorporate by reference" all preceding paragraphs of his Complaint. (Id. ¶ 70.) At this early stage of the proceedings, the Court is required to assess the Complaint in the light most favorable to the plaintiff. Roskos v. Sugarloaf Twp., 295 F. Supp. 2d 480, 483 (M.D. Pa. 2003) (internal citation omitted). Thus, despite the fact that Plaintiff did not provide these facts directly in the section of his Complaint discussing his failure to train allegation, the Court nonetheless finds that Plaintiff has provided enough evidence in his Complaint—regardless of under which heading it is located—to support a claim of municipal liability based on a failure to train theory.

### E.    Punitive Damages

Finally, Plaintiff seeks compensatory and punitive damages for Defendants' alleged violations of his constitutional rights. Despite Plaintiff's assertions to the contrary, the Supreme

Court has established that municipal governments may not be sued for punitive damages under §

1983.  See City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981).  As such, Plaintiff is

precluded from recovering any punitive damages from the County.

**IV.**     **CONCLUSION**

For the reasons set forth above, the Court finds that Defendants' Motion to Dismiss Counts

V through VIII of Plaintiff's Complaint is granted in part and denied in part.

An appropriate Order follows.